AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>11/05/2025<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___KM___ DEPUTY | # UNITED STATES DISTRICT COURT<br>for the<br>Central District of California | FILED<br>CLERK, U.S. DISTRICT COURT<br>11/5/2025<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___MMC___ DEPUTY |

United States of America

v.

Dennis Quinonez,

Case No. 2:25-MJ-06935-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Gabriel Denton, the complainant in this case, state that the following is true to the best of my knowledge and belief.  On or about the date of November 4, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(9) | Unlawful possession of firearm and ammunition by person previously convicted of domestic violence |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Gabriel Denton, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 11/5/2025

Judge's signature

City and state: Los Angeles, California

Hon. Margo A. Rocconi, U.S. Magistrate Judge
Printed name and title

AUSA: __Neil Thakor x 6595

**AFFIDAVIT**

I, Gabriel Denton, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since April 2007. I am currently assigned to the Integrated Operations Group Task Force, where I conduct investigations into violations of Federal firearms and immigration laws.

2. I have completed the Criminal Investigator Training Program and Special Agent Basic Training at the Federal Law Enforcement Training Center, where I received training in Federal laws and regulations. I regularly refer to these laws and regulations to perform my duties. During the course of my career with ATF, I have investigated or participated in investigations into hundreds of individuals illegally in possession of firearms. I have participated in all aspects of these investigations to include surveillance, undercover operations, interviews, and execution of search and arrest warrants.

## II.  PURPOSE OF AFFIDAVIT

3. I make this affidavit in support of a complaint against, and arrest warrant for, Dennis QUINONEZ ("QUINONEZ") for a violation of 18 U.S.C. § 922(g)(9): Possession of a Firearm by a Person Previously Convicted of Domestic Violence.

4.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically stated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates and times are on or about those indicated.

### III. STATEMENT OF PROBABLE CAUSE

5.   Based on my review of law enforcement reports, conversations with other law enforcement officers and agents, as well as my own knowledge of this investigation, I am aware of the following:

    **A.   QUINONEZ Is Seen Throwing Rocks At Federal Agents During An Immigration Enforcement Action**

6.   On November 4, 2025, at approximately 9:15 a.m., two teams of United States Border Patrol Agents ("BPAs") were conducting an immigration enforcement action at the Home Depot located at 2055 N. Figueroa St., in Los Angeles, California.  One team of the BPAs were responsible for conducting the enforcement action (the "Enforcement Team"), while the second team was stationed at the southside of the Home Depot parking lot observing for any incidents that require additional law enforcement back-up (the "Quick Response Team").

7.   As the Enforcement Team loaded the target of the immigration enforcement action into their law enforcement vehicle, the Quick Response Team observed a man, later identified as QUINONEZ, yelling at the Enforcement Team while holding a hammer in a threatening manner. QUINONEZ was standing next to a hatchback SUV (the "SUV") approximately 100 feet away from the Enforcement Team's vehicle.

8.   As the Enforcement Team entered their vehicle to leave the Home Depot parking lot, the Quick Response team saw QUINONEZ walk to the rear of the SUV and place the hammer inside the trunk. As the Enforcement Team's vehicle passed QUINONEZ, the Quick Response Team observed QUINONEZ throw a large dark object, which resembled a rock, at the passing Enforcement Team's vehicle. Shortly thereafter, the Quick Response Team saw QUINONEZ throw another object, also resembling a rock, at the rear of the Enforcement Team's government vehicle. After throwing the two rock-like objects, QUINONEZ then closed the trunk and entered the driver's seat of the SUV.

**B.   QUINONEZ Is Arrested And Found In Possession of a Loaded Firearm**

9.   Before QUINONEZ could drive away in the SUV, the Quick Response Team activated its patrol lights and sirens and positioned their vehicle in a manner to prevent QUINONEZ from leaving. QUINONEZ then exited the vehicle and began yelling at the agents, saying that his daughter was in the vehicle and that he did not want to be separated from her. Believing that QUINONEZ had attempted to assault federal agents, or damage

government property, by throwing rocks at the agents and their vehicles, the BPAs placed QUINONEZ under arrest.

10. At this time, a crowd of bystanders began to gather around the BPA officers and QUINONEZ. To protect the safety of the BPAs, QUINONEZ, and his daughter, the BPAs considered transporting QUINONEZ and his daughter away from the crowd of people by driving them to a secondary location in QUINONEZ's SUV, so as to not to separate QUINONEZ from his daughter. The BPAs discussed that option with QUINONEZ, and QUINONEZ agreed and gave his consent that the BPAs could drive the SUV with QUINONEZ in the passenger seat of the car to allow QUINONEZ to be with his daughter.

11. The BPAs then walked with QUINONEZ to the passenger seat of the SUV. As the BPAs prepared to place QUINONEZ in the passenger seat of the SUV, an agent saw an object on the front passenger floorboard wrapped in a blue bandana. Based on the shape and weight of the object in the bandana, the agent believed the item to be a handgun. The agent partially unwrapped the bandana and confirmed a handgun was inside.

12. Once BPAs realized there was at least one weapon in the vehicle, the BPAs made the decision to transport QUINONEZ in their patrol car separate from his daughter. QUINONEZ was transported in the BPA vehicle to a secondary location away from the crowd of people, QUINONEZ demanded that he not be separated from his daughter, so two BPAs drove QUINONEZ's vehicle with his daughter in the back seat to the same secondary location. While at the secondary location with QUINONEZ, BPAs examined the

firearm and determined that it was loaded with five rounds of ammunition.

13.   QUINONEZ was then transported to the Federal Building in downtown Los Angeles, California for a post-arrest interview while arrangements were made to unite QUINONEZ's daughter with her mother.  Upon arrival at the Federal Building, as BPAs inventoried QUINONEZ's personal belongings, BPAs discovered QUINONEZ's California Driver's License which confirmed his identity.

14.   Law enforcement officers conducted a <u>Mirandized</u> interview of QUINONEZ at the Federal Building. During the interview, QUINONEZ told law enforcement (in substance and summary):

- That he threw a rock at the BPA vehicle because he believed the agents inside the vehicle were with Immigration and Customs Enforcement, or "ICE";
- That the firearm inside his vehicle belonged to a friend;
- That his fingerprints would be found on the firearm because he had handled it in the last few months.

15.   Based on a search of law enforcement databases of the serial number of the firearm, I was able to determine that the firearm had previously been reported stolen out of the state of New York.

//

### C. QUINONEZ Is Prohibited From Possessing Firearms Because Of His Prior Domestic Violence Conviction

16. On November 4, 2025, I conducted a criminal history inquiry of QUINONEZ and determined that he had previously sustained the following misdemeanor conviction:

    a. On March 3, 2014, in the Superior Court of California, Los Angeles County, QUINONEZ was convicted for violation of California Penal Code, Section 273.5(a): Infliction of Corporal Injury on a Spouse/Cohabitant.

### D. The Firearm and Ammunition Travelled Through Interstate Commerce

17. On November 4, 2025, ATF Special Agent Donovan Manning examined the firearm and ammunition found in QUINONEZ's vehicle. SA Manning identified the firearm as a Smith & Wesson model 26, 9mm caliber pistol bearing serial number 112030. It was loaded with five rounds of .38 caliber ammunition with headstamp markings of "G.F.L." and "38S&W". SA Manning determined that both the firearm and ammunition were manufactured outside the state of California. As a result, SA Manning determined that for these items to have been recovered within the state of California, they all must have traveled in and/or affected interstate and/or foreign commerce.

//
//
//

## IV. **CONCLUSION**

18. For the foregoing reasons, there is probable cause to believe that QUINONEZ has committed a violation of 18 U.S.C. § 922(g)(9): Possession of a Firearm by a Person Previously Convicted of Domestic Violence.

/s/
Gabriel Denton, Special Agent, ATF

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 5th day of
November 2025.

_____
HONORABLE MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE